```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
NOELLE HOLLY SIMMONS,

                    Plaintiff,                    10-CV-6548

            v.                                    DECISION
                                                  and ORDER
MICHAEL J. ASTRUE,
Commissioner of Social Security

                    Defendant.
_____
```

## Introduction

Plaintiff Noelle Holly Simmons ("Plaintiff") brings this action pursuant to Title II of the Social Security Act, claiming that the Commissioner of Social Security improperly denied her application for disability insurance benefits. Specifically, Plaintiff alleges that the decision of Administrative Law Judge Robert Gale ("ALJ") was erroneous and not supported by substantial evidence in the record.

The Commissioner moves for judgment on the pleadings pursuant to rule 12(c) of the Federal Rules of Civil Procedure, on the grounds that the ALJ's decision was supported by substantial evidence and contained no error of law. Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the pleadings. For the reasons set forth herein, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law, and therefore, I grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's cross motion for judgement on the pleadings.

## Background

On May 11, 1995, Plaintiff, as a minor, was found disabled due to spinal muscular atrophy, and became eligible to receive Supplemental Security Income. (Tr. 28-29, 41-42). The Commissioner continued to find Plaintiff disabled in 1999 and 2003. (Tr. 30-31, 43-46). In 2008, Plaintiff's disability status was redetermined using the adult standard. (Tr. 32, 47-50). It was determined that Plaintiff was no longer eligible for Supplement Security Income. Id. Plaintiff appealed that decision, claiming she suffered spinal muscular atrophy and a learning disability, but a disability hearing officer found that Plaintiff was not disabled. (Tr. 53, 61-70, 601-03). Plaintiff requested a hearing which was held before ALJ Robert Gale on May 27, 2010. (Tr. 607). The ALJ considered the case de novo and on June 25, 2010, found Plaintiff not disabled under the Act. (Tr. 17-26). Plaintiff filed a request for review of the ALJ's decision which the Appeals Council denied on August 20, 2010, making the ALJ's decision the final decision of the Commissioner. (Tr. 9-11). On September 27, 2010, Plaintiff timely filed this action.

## Discussion

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the

Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).

## II. **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record**

The ALJ, in his decision, found that the Plaintiff's disability ended on December 12, 2008 and she had not become disabled since that date. (Tr. 26). In doing so, the ALJ followed the Social

3

Security Administration's five-step sequential analysis for determining whether or not a clamant suffers from a disability. See 20 C.F.R. § 404.1520.[1]

Step one of the analysis is not used for redetermining disability, therefore the ALJ began the analysis at step two. (Tr. 18). At step two the ALJ concluded that Plaintiff's spinal muscular atrophy and borderline intellectual functioning were severe. At step three, the ALJ concluded that these impairments did not meet or equal singly or in combination, any of the impairments listed in regulations Appendix 1. (Tr. 21). The ALJ also concluded that Plaintiff's headaches and asthma were non-severe impairments. (Tr. 19).

At step four the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the exception that Plaintiff can lift and/or carry ten pounds occasionally and less than ten pounds frequently. (Tr. 22), See 20 C.F.R. §416.967(b). At step 5 the ALJ determined that the Plaintiff had no past relevant work. Therefore, in the fifth step, the ALJ

---

[1] Five step analysis includes: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, third inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in regulations Appendix 1, and if so claimant will be considered disabled without considering vocational factors (4) if claimant does not have listed impairment, fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work or does not have any past relevant work, the ALJ determines whether claimant could perform other work. See id.

4

considered Plaintiff's age, education, work experience, and residual functional capacity to determine whether or not Plaintiff could perform any job in the national economy. The ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was able to perform. (Tr. 25).

Based on the entire record, including all relevant medical evidence, I find there is substantial evidence in the record to support the ALJ's determination that the Plaintiff was not disabled within the meaning of the Act.

### A. Medical and non-medical evidence in the record supports the ALJ's determination that Plaintiff was not disabled

Plaintiff's records indicate that she was examined and diagnosed with spinal muscular atrophy in 1994 by Dr. David Halpert. (Tr. 336). Dr. Halpert's impression at that time was that Plaintiff's spinal muscular atrophy had a "slow progression." (Tr. 323-24). In January 2006, Plaintiff returned to Dr. Halpert complaining of lower back pain. (Tr. 412-14). Dr. Halpert determined that a lumbar spine magnetic resonance imaging study was unremarkable. (Tr. 412). Dr. Halpert questioned the spinal muscular atrophy diagnosis, as it was a progressive disease, but had not progressed. (Tr. 412-13). Dr. Halpert reported that genetic testing was negative for spinal muscular atrophy. Id.

In July 2007, Dr. Emma Ciafaloni conducted her first examination of Plaintiff. (Tr. 417-19). Examination showed Plaintiff had "normal" strength throughout, except for some 4+ and

5-/5 strength in the lower extremities. (Tr. 418). Additionally, she had a "normal" gait, the ability to walk on her toes and heels and she could rise rapidly from lying down. Dr. Ciafaloni concluded that the evidence pointed to spinal muscular atrophy but that Plaintiff could undertake physical activity that did not require running. Id.

On November 25, 2008, Plaintiff was examined by Dr. Pranab Datta on referral by the Division of Disability Determination. Plaintiff complained of shoulder, back and leg pain. (Tr. 460). She stated she had persistent pain that was at a 9.5/10 on the pain scale. Id. Examination showed that Plaintiff was in no acute distress. Dr. Datta found that gait was "normal, she could walk on her heels and toes and rise from a chair without difficulty. Id. Additionally, he found that she had a full squat, had full range of motion in her cervical and lumbar spine, shoulders, elbows, forearms, wrists, ankles, knees and hips. Id. Dr. Datta also found that Strength was 5/5 in upper and lower extremities and joints were stable and nontender. Id. Deep tendon reflexes were equal, and she had no motor or sensory deficits or muscle atrophy. Id. Plaintiff stated that she showered, cooked, did laundry, cleaned, shopped, and occasionally did childcare. (Tr. 461). Dr. Datta concluded that claimant could probably participate in all normal activities, but should avoid prolonged activities requiring moderate exertion.

In February 2009, a state agency physician, Dr. Husain, provided a function assessment of Plaintiff. Tr. (490-87).

6

Dr. Husain found Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, push and pull without further limit and stand, walk and sit each for a total of about six hours in an eight-hour workday. (Tr. 493-94).

Dr. Jeffrey Donner evaluated Plaintiff in November 2008. (Tr. 570-77). IQ testing showed a verbal IQ of 81, a performance IQ of 60, and a full scale IQ of 70. (Tr. 571). Approximately two weeks later, Dr. Dennis Noia, evaluated Plaintiff. Tr. 450-59. He noted that she could dress, bathe, groom, cook, clean, shop, manage money and drive. (Tr. 452, 458). Examination showed Plaintiff was cooperative, with moderately adequate relating, social skills and presentation. (Tr. 451, 456). IQ testing showed a verbal IQ of 83, performance IQ of 72 and full scale IQ of 70. (Tr. 457). Dr. Noia concluded that Plaintiff was capable of understanding and following simple instructions and directions, performing simple and some complex tasks independently and with supervision, maintaining a schedule and relating to and interacting moderately well with others. (Tr. 452, 458).

In December 2008, State agency psychologist, Dr. Blackwell, completed a psychiatric review form. (Tr. 470-8). Dr. Blackwell concluded that Plaintiff had "moderate" difficulty in maintaining concentration, persistence, or pace; but no restriction in activities of daily living or difficulties maintaining social functioning, and no episodes of deterioration lasting for an

extended duration. (Tr. 480). Dr. Blackwell found sufficient evidence to show Plaintiff was able to perform simple tasks. (Tr. 468).

Plaintiff alleged that she was disabled due to migraines. (Tr. 616). In January 2009 she saw Dr. Caren Douenia for a neurological consultation concerning her migraines. (Tr. 531). During the examination Plaintiff complained of increasingly frequent headaches that would occur above her right eye. Dr. Douenia prescribed Topamax and requested a follow up in eight weeks. In August of 2009, Plaintiff reported only suffering from a migraine once a month and that it was managed by medication. (Tr. 517).

Considering Plaintiff's testimony and medical records, the ALJ correctly determined that Plaintiff had borderline intellectual functioning and spinal muscular atrophy. (Tr. 19). Additionally, the ALJ determined that Plaintiff had headaches and asthma but that these impairments were not severe. Id.

### i. The ALJ correctly assessed that Plaintiff's impairments did not meet or equal an impairment in the Listings

Plaintiff argues that the ALJ erred by not finding that Plaintiff's impairments met Listing 12.05(c) of the Appendix, a listing of mental retardation. See Plaintiffs' Memorandum of Law at 16 (hereinafter Pl. Mem.). To establish disability under Listing § 12.05(C), Plaintiff must show three things: "(1) below-average intellectual function with adaptive functioning deficits manifested before age 22 and continuing during the claim period, (2) a valid IQ score of 60 through 70, and (3) an impairment, other than his low

8

IQ, that imposes an additional and 'significant work-related limitation of function.'" Ali v. Astrue, 2010 WL 889550 (E.D.N.Y. 2010) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C)).

Plaintiff has established the IQ component of § 12.05(C). Testing done by both Dr. Noia and Dr. Donner reveal that Plaintiff has at least a performance or full scale IQ score which is between 60 through 70. (Tr. 457, 571). Additionally, Plaintiff has established an additional impairment which imposes a "significant work-related limitation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C). The ALJ acknowledges that Plaintiff's spinal muscular atrophy is a physical impairment which meets the requirements of § 12.05(C). (Tr. 21). Therefore, the only dispute is whether Plaintiff has adaptive functioning deficits.

Adaptive functioning refers to "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background and community setting." Diagnostic and Statistical Manual of Mental Disorders, 42, (American Psychiatric Association, 4th ed. 2000). The plain language of the regulations, however, does not require a complete lack of adaptive functioning. See Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir.1983) ("The claimant need not demonstrate that he is completely helpless or totally disabled."); see West v. Comm'r of Soc. Sec. Admin., 240 Fed. Appx. 692, 698 (6th Cir. 2007) ("Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills.").

Courts can use circumstantial evidence to infer deficits in adaptive functioning. Examples include whether a claimant attended special education classes; dropped out of school; or had difficulties in reading, writing, or math. See Christner v. Astrue, 498 F.3d 790, 793 (8th Cir.2007); Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir.2006); Novy v. Astrue, 497 F.3d 708, 710 (7th Cir.2007) (concluding that the plaintiff did not have adaptive functioning deficits where she lived on her own, took care of three children, paid her bills, and avoided eviction).

The ALJ is entitled to take the claimant's living conditions and school records into account when determining whether the claimant had deficits in her adaptive function prior to the age of 22. See Novy, 497 F.3d 708, 710. Plaintiff testified that she lived alone in an apartment, could take care of her personal hygiene, clean dishes, clean her house, make her own meals, go to the store, and use public transportation. Moreover, she had a driver's license and a car, which she drove approximately twenty miles per week. (Tr. 611-12, 615-18). Additionally, Plaintiff was able to graduate from high school, receiving a local diploma rather than a special education certificate. (Tr. 20-21). Furthermore, medical evidence in the record supports an inference that Plaintiff does not have a adaptive functioning deficit. Dr. Donner found that Plaintiffs social skills were adequate, that she could maintain schedule, and could relate and interact moderately well with others.

Dr. Blackwell found no restrictions in activities of daily living or maintaining social functions.

Finally, Plaintiff's argument that she meets the listing of § 12.05(C), a listing for mental retardation, is unsupported by the fact that no medical professional had ever diagnosed Plaintiff with mental retardation. I conclude that the ALJ's finding that Plaintiff does not suffer from adaptive functioning deficits is supported by substantial evidence in the record.

### ii. The ALJ properly determined that Plaintiff was able to perform a full range of light work

Plaintiff argues that remand is required because the ALJ did not take into account Plaintiff's non-exertional limitation when determining her RFC. Plaintiff alleges that her non-exertional limitations coupled with her exertional limitations required the use of a vocational expert to determine her ability to work. See Pl. Mem. at 22.

The Second Circuit has held, "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986). However, the existence of a non-exertional limitation alone does not require the advice of a vocational expert. Id. at 603. The existence of a mental limitation must cause an additional loss of work capacity beyond that of the exertional limitation. See Zabala v. Astrue, 595 F.3d 402 (2nd Cir. 2010)(finding that a Vocational

Expert was unnecessary when Plaintiff's mental condition did not limit her ability to perform unskilled work, including carrying out simple instructions, dealing with work changes, and responding to supervision).

In the instant case, the ALJ found that Plaintiff's mental conditions allowed her to perform simple tasks independently and with supervision, attend a routine and make appropriate simple decisions and respond appropriately to supervision.  (Tr. 22). Thus, Plaintiff's non-exertional limitations did not result in an additional loss of work capacity, and the ALJ's properly used the Medical-Vocational Guidelines to determine Plaintiff's capacity to work.

iii. **<u>The ALJ properly weighed the evidence in the record</u>**

Plaintiff argues that the ALJ erred by assigning less weight to a Vocational Rehabilitation Counselor, Pellegrino, regarding her opinion on Plaintiff's non-exertional limitations. <u>See</u> Pl. Mem. 23. Counselor Pellegrino opined that plaintiff would require extended training and specialized instructional methods when entering new job situations.  (Tr. 286).

Counselor Pellegrino's opinion is not an acceptable medical source.  (Tr. 24); <u>see</u> 20 C.F.R. § 416.913(a).  The ALJ properly assessed the medical evidence in the record to determine Plaintiff's RFC.  In doing so he gave significant weight to the opinions of Dr. Noia and some weight to Drs. Blackwell and Donner.  It is within the ALJ's discretion to review the medical evidence in the record

and resolve genuine conflicts. <u>Veino v. Barnhart</u>, 312 F.3d 578, 588 (2nd Cir. 2002); <u>see also</u> <u>Harris v. Barnhart</u> 171 Fed. Appx. 211 (9th Cir. 2006)(It is the ALJ's duty to resolve conflicts and ambiguities in the medical and non-medical evidence).

iv. **<u>The ALJ properly concluded that the Plaintiff's testimony was not entirely credible.</u>**

The ALJ found that, evaluating the medical evidence, and the Plaintiff's testimony regarding her daily activities, the Plaintiff's complaints of severe pain and functional limitations were not entirely credible. (Tr. at 23).

Plaintiff testified that two or three times a week she experienced bad days where she felt weak, without strength and could not move. (Tr. at 627). She also testified that she had bad migraines which she suffered twice a week and were a six out of ten on a pain scale. (Tr. 617).

Plaintiff stated that she lived alone and got along well with her relatives. (Tr. 618). Her daily activities included doing chores such as cleaning, dishes, laundry, bathing and cooking. (Tr. at 618-20). She testified that she reads, watches television, can use the computer and internet, and drives herself 20 miles a week. Additionally she has a dog which she likes to take out for walks. (Tr. 619). Plaintiff testified that she volunteered at her aunt's daycare, only for the summer of her sophomore year of high school, but was not paid for this activity. (Tr. 613).

In a individualized education report, filled out during Plaintiff's senior year of high school, it stated that Plaintiff was

working at a daycare center.  (Tr. 267).  Additionally, Plaintiff claims she is incapacitated for two to three days a week but was able to attend school full time without physical accommodation and she entered college.  Additionally, on a visit to Dr. Datta, Plaintiff complained of pain that was 9.5 out of 10.  However, Dr. Datta recorded that Plaintiff did not appear to be in any distress and his examination was unremarkable.  (Tr. 463).

The ALJ correctly evaluated Plaintiff's credibility and concluded that her testimony was not entirely credible.  Plaintiff was able to perform a wide range of daily activities, and the medical evidence supports the decision that the Plaintiff is able to perform light work.  Based on the medical evidence in the record and the Plaintiff's testimony, this Court finds that there was substantial evidence in the record for the ALJ to conclude that the Plaintiff was not disabled within the meaning of the Social Security Act.

## CONCLUSION

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings.  Plaintiff's cross-motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED: July 13, 2011
       Rochester, New York